**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KEVIN CONNORS,** | )( | **Civil Action No.:4:17-cv-1512** |
| | )( | |
| *Plaintiff,* | )( | |
| | )( | |
| **v.** | )( | **JURY TRIAL** |
| | )( | |
| **EDGAR HULIPAS,** *Individually, et al.,* | )( | |
| | )( | |
| *Defendants.* | )( | |

## PLAINTIFFS' 1st[1] AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE VANESSA D. GILMORE:**

COMES NOW Plaintiff Kevin Connors, an inmate in custody of the State of Texas, and files this complaint for damages and a permanent injunction against Defendants TDCJ Director Bryan Collier, TDCJ Region 1 Director Tony O'Hare, TDCJ Estelle Unit Warden Christopher Carter, TDCJ Estelle Unit Medical Director Dr. Barbara Williams, Dr. Edgar Hulipas and Terry Speer, for violations of his civil rights under the First and Eighth Amendments of the U.S. Constitution. Connors also seeks damages against the University of Texas Medical Branch, The State of Texas and the Texas Dept. of Criminal Justice pursuant to the Americans with Disabilities Act and Rehabilitation Act. Connors respectfully shows the Court as follows.

## NUTSHELL

1.     Mr. Connors, a TDJ inmate, has been prescribed a "low residue (low ficer)" diet due to his severe, sensitive digestive tract conditions caused by colorectal cancer. It is an easy diet to provide. TDCJ has refused to provide it to him causing great pain and potentially, life-threatening conditions. When Mr. Connors filed his original complaint seeking injunctive relief

---

[1]Pursuant to Order this is an amended complaint "as a matter of course" needing no motion for leave to file.

from those individuals in charge of his diet at the TDCJ Darrington Unit, the State of Texas pulled the *"oldest trick in the inmate litigation handbook"*-they moved Mr. Connors to another unit, the TDCJ Estelle Unit, thereby, mooting the injunctive relief against those controlling his diet at the Estelle Unit. This gamesmanship is wasting valuable court time and attorney's fees and expenses.

2.      Due to TDCJ's legal trickery and in order to save Mr. Connors' life there is no choice but to add TDCJ Director Bryan Collier, TDCJ Region 1 Director Tony O'Hare, and local medical director Dr. Barbara Williams for injunctive relief. Hopefully, now the Court can now decide the life-threatening health issue at hand without undue delay.

3.      The medical specialists who treated Connors ordered that he be given a "low-residue diet" to prevent serious and life-threatening bowel obstructions. Without the diet, digestive waste will not flow properly into the ileostomy bag. Liquid digestive waste will seep uncontrollably out of Connors's anus and solid digestive waste will form into a ball and obstruct what remains of his bowels or create an abscess.

4.      Medical staff at the Darrington Unit, namely Defendants Dr. Edgar Hulipas and Nurse Terry Speer, routinely denied Connors with his required diet to humiliate him and as punishment in retaliation for him making formal and informal complaints against them. Now Dr. Barbara Williams at the Estelle Unit is continuing to tow the TDCJ line and not provide the low residue diet.

5.      Connors has had five emergency surgeries since 2011 caused by eating an inappropriate diet, some of which while in the care of Hulipas. Hulipas and Speer had denied Connors the appropriate low-residue diet for twelve or more weeks and now Williams at the Estelle Unit is doing the same. Furthermore, in the past Hulipas and Speer, and now Williams (and hence, Collier, Carter and O'Hare) and medical staff under her supervision and control, not only deny Connors of his medically needed diet, but they deny him other medical supplies that he absolutely needs to be healthy. Other denied medical supplies include cleaning material for his stoma, ileostomy bag

supplies, medication to control his damaged urinary bladder, and a sufficiently long tube for a uro-bag that would allow him to walk normally.

6.     Connors has disabilities as defined by the Americans with Disabilities Act, including but not limited to: Connors must eat a low-residue diet or risk hospitalization and death; Connors needs numerous inexpensive medical supplies to keep the stoma hygienic; Connors cannot defecate or control any digestive waste; Connors cannot control his urinary bladder.

7.     Connors is mocked, taunted, and tormented by TDCJ medical staff and inmates because of his special diet and physical disabilities. When Connors has spoken up for himself informally and through the formal complaint process, Hulipas, Speer, and staff under their control withheld needed medical supplies even when said supplies are plainly visible in the doctor's office. Connors's physical, mental, and emotional torment is long-term and severe. Now Dr. Williams (and hence Collier, Carter and O'Hare) at the Estelle Unit controls these much-needed medical supplies an injunctive relief

8.     Defendants know that Connors is disabled and requires medical supplies prescribed by medical specialists. Defendants know that Connors has needed emergency surgery five times due to bowel obstructions caused by inappropriate food. Yet Defendants routinely deny him of medical supplies with knowledge and deliberate indifference to these medical supplies because Hulipas and Speer had become dictators of medical policy at the Darrington Unit and now Dr. Williams (and hence Collier, Carter and O'Hare) at the Estelle Unit. They routinely abuse their authority and they put inmates including Connors at risk of serious injury and death for their own pleasure. Administrators and policy-making officials at TDCJ and UTMB are aware that Connors needs medical supplies but is routinely denied getting them.

## II.   JURISDICTION & VENUE

9.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343. Federal question jurisdiction arises pursuant to 42 U.S.C. §§ 1983, 12188(a). Injunctive relief is permitted pursuant

to the Anti-Injunction Act (28 U.S.C. § 2283) and the All-Writs Act (28 U.S.C. § 1651(a)).

10. Venue is proper pursuant to 28 U.S.C. § 1391 because the injuries giving rise to this action happened in the Southern District of Texas and, on information and belief, all Defendants reside in the Southern District of Texas.

11. All conditions precedent have been performed or have occurred.

### III.    PARTIES

12. Plaintiff, Kevin Connors ("CONNORS") is a competent adult and an inmate in the custody of the State of Texas (TDCJ ID# 1284939), who at sometimes relevant to this complaint resided Brazoria County and now in Brazos County, Texas.

13. Defendant Barbara Williams, M.D., ("WILLIAMS") is sued in her individual capacity. She is the medical director of the Estelle Unit and an employee of the University of Texas Medical Branch. He acted under color of law at all times relevant to this complaint. She may be served with process at: Estelle Unit, 264 FM 3478, Huntsville, Texas 77320-3320.

14. Bryan Collier ("COLLIER") is the TDCJ Executive Director and he can served with process at P.O. Box 13084-Capitol Station, Austin, Texas 78711-3084 or wherever he is found.

15. Christopher Carter ("CARTER") is the Warden at the Estelle Unit and can be served with process at Estelle Unit-TDCJ, 264 FM 3478, Huntsville, Texas 77320-3320 or wherever he is found.

16. Tony O'Hare is the TDCJ Region 1 Director and can be served with process at the Region I Director's Office1225 Avenue G, Huntsville, TX 77340 or wherever he is found.

17. Defendant Edgar Hulipas, M.D., ("HULIPAS") is sued in his individual capacity. He is the medical director of the Darrington Unit, a non-specialist family medical doctor, and an employee of the University of Texas Medical Branch. He acted under color of law at all times relevant to this complaint. He may be served with process at: Darrington Unit, 59 Darrington

Rd., Rosharon, TX 77583.

18.      Defendant Terry Speer, ("SPEER") is sued in his individual capacity. He is a mid-level nurse practitioner at the Darrington Unit and an employee of the University of Texas Medical Branch. He acted under color of law at all times relevant to this complaint. He may be served with process at: Darrington Unit, 59 Darrington Rd., Rosharon, TX 77583.

19.  Defendant University of Texas Medical Branch, ("UTMB") is an agency of the State of  Texas. UTMB operates and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, employees, agencies, and departments, including the medical staff at the Darrington Unit prison facility ("Darrington Unit"). It may be served with process by serving its chief executive officer: Donna K. Sollenberger, University of Texas Medical Branch at Galveston, 301 University Boulevard, Galveston, TX, 77555.

20.      Defendant Texas Department of Criminal Justice, ("TDCJ") is an agency of the State of  Texas. TDCJ operates and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, employees, agencies, and departments, including the prison staff at the Darrington Unit. It may be served with process by serving its executive director: Bryan Collier, Texas Department of Criminal Justice, 209 West 14th Street, 5th Floor, Price Daniel Building, Austin, TX 78701.

### IV.      JURY DEMAND

21.      Plaintiff respectfully requests a trial by jury on all claims/issues in this matter that may be tried to a jury.

### V.   ADDITIONAL STATEMENT OF FACTS

#### BACKGROUND

22.      CONNORS was diagnosed with colorectal cancer while in custody of the State of Texas. In 2011, CONNORS was successfully treated through protocolectomy that removed a substantial amount of his colon and rectum. The surgery had made it impossible for CONNORS

to defecate. Surgeons created a stoma at CONNORS's ileum—on his front side, at the lower-right of his abdomen. The stoma is a dime-sized opening between his ileum and the outside. The stoma allows liquid digestive waste to pass from CONNORS's small intestine into an ileostomy bag. The bag is attached to his skin with what's called a wafer. The ileostomy bag and wafer each are short-term supplies that should be changed every day in hot weather and at least every three days. These supplies are necessary for CONNORS because he cannot defecate.

23.   CONNORS must have a "low-residue diet" so that his digestive waste remains liquid and passes safely into the ileostomy bag. A diet that contains more than a trace amount of residue will not pass through the stoma and will continue into what remains of CONNORS's colon. Generally, when CONNORS eats an inappropriate diet, his solid digestive waste will form into a ball and create a life-threatening bowel obstruction. Any liquid that travels with the solid waste will seep out his anus uncontrollably. When they are available, CONNORS has learned to wedge a gauze pad at his anus to catch any blood or digestive waste so it does not run down his leg. CONNORS's treating physicians including those specialists who performed his protocolectomy and those specialists who monitored his gastro-intestinal health thereafter each have ordered CONNORS to have a low-residue diet.

24.   For example, Dr. Siva Krishna Mannem, a UTMB Medical Oncology Fellow, reviewed CONNORS's April 2015 complaint that he was not receiving a low-residue diet. The doctor's written order to HULIPAS was: ***"Please provide the patient with a low residue diet to prevent recurrent complications with rectal obstruction, which can likely result in another rectal infection and abscess formation that would likely result in patient to be admitted to a hospital necessitating long term antibiotics and surgical drainage, which may be a very morbid procedure for the patient."*** Dr. Mannem additionally commented, "Low residue diet should be daily osmolite in addition to his meals (boost is optimal but patient states that they don't provide that at the unit.)" Osmolite is a nutritionally dense, low-residue formula made specifically for

patients like CONNORS. Boost is similar to Osmolite. Both formulas are meant to supplement an otherwise low-residue diet that may be nutritionally inadequate. Hence, a low-residue diet with Osmolite or Boost is nutritionally adequate but it's nutritionally inadequate without the formula.

25.     CONNORS was again prescribed Osmolite in January 2016 after hospitalization for rectal and stomal bleeding. CONNORS has been prescribed the formula at least three times since his 2011 surgery. Each prescription has not expired, but they were reissued because they were not being honored by TDCJ and UTMB medical staff including HULIPAS and SPEER and nor WILLIAMS.

### DEFENDANTS DEPRIVE CONNORS OF NEEDED NUTRITIONAL FORMULA

26.     HULIPAS is the medical director at the Darrington Unit, and WILLIAMS at the ESTELLE UNIT, and in primary control of medical supplies including special medical diets. HULIPAS is a general practice family doctor and not a specialist in any medical field relevant to CONNORS, such as cancer or protocolectomies.

27.     SPEER is a nurse practitioner at the Darrington Unit and had control over ordering medical supplies including medical diets. SPEER is not a specialist in any medical field relevant to CONNORS, such as cancer or protocolectomies.

28.     Since his surgery, CONNORS was continually denied formula by HULIPAS, SPEER, and now WILLIAMS and other medical staff under their supervision and control. HULIPAS and SPEER have no medical basis to deny CONNORS of formula and neither does WILIAMS now. On one or more occasions, a visiting nurse practitioner who is not regularly employed at Darrington Unit has ordered formula for CONNORS when HULIPAS and SPEER have refused to order formula and were not present. Recently CONNORS has been getting one Osmolite (or Boost) when he needs three.

29.     CONNORS has had approximately twelve medical emergencies since 2011, each caused by a bowel obstruction, and each requiring hospitalization. CONNORS is prone to bowel

obstructions when he eats an inappropriate diet. Each of his medical emergencies while at Darrington Unit were the direct result of HULIPAS and/or SPEER denying CONNORS's access to the formula. When CONNORS is denied formula, he has no choice but to eat inappropriate food otherwise he will not feel full nor have proper nutrition. CONNORS will lose weight and feel sick if he is deprived of formula and still eats low-residue food because low-residue food is nutritionally inadequate. When CONNORS eats inappropriate food, it either drains out of his anus because he has no control over defecation or the inappropriate food will accumulate into a ball and eventually obstruct what remains of his bowels.

30.     CONNORS needed emergency treatment in April 2015 and January 2016 as described above. His medical prescriptions for a low-residue diet that followed those emergencies are part of ongoing medical treatment that extend beyond their prescription date. These prescriptions for formula have no real expiration date because CONNORS will not regrow his colon.

31.     Bowel obstructions cause CONNORS extreme pain and suffering. His abdomen will swell and distend. He will sweat, lose vertigo, become nauseas, and be miserable. CONNORS is prone to and has also experienced inflammation, bleeding, abdominal cramps, severe fatigue, weight loss, fever, and other maladies as a result of bowel obstructions. Left untreated, bowel obstructions will cause his gut to rupture resulting in death, or they can cause abscesses and lead to systemic infections, or kill him in other ways.

32.     On one occasion when CONNORS's bowel was obstructed, the ball of digested food created a life-threatening abscess. Surgeons at UTMB drilled a hole into CONNORS's buttocks to drain the abscess, then put him on an antibiotic regimen.

33.     On another occasion when CONNORS's bowel was obstructed, he was in such a state of emergency that a nurse lubricated his own hand and manually dug out from CONNORS's bowels a ball of digested food that was causing the blockage.

34.   CONNORS has had surgery approximately five times to remove bowel obstructions, each caused by CONNORS having no choice but to eat an inappropriate diet because TDCJ and UTMB staff, including HULIPAS and SPEER, have denied CONNORS the formula.

35.   HULIPAS and SPEER did, and now WILIIAMS routinely deny CONNORS formula knowing that medical specialists have ordered that he be given either formula ("Boost is optimal"), knowing that CONNORS was hospitalized approximately twelve times and needed surgery approximately five times as a result, and knowing that bowel obstructions cause extreme pain, suffering, and may result in death. Prison officials at the Darrington Unit, including Assistant Warden Danheim, know that HULIPAS and SPEER deny CONNORS his prescribed diet, know CONNORS has been hospitalized as a result, but Danheim has failed to ensure that CONNORS receives the medical care he requires. Now at the Estelle Unit WILLIAMS, warden CARTER, TDCJ Director COLLIER and Region 1 Director O'HARE have failed to ensure these that CONNORS receives the medical supplies he requires.

36.   CONNORS has filed administrative complaints within TDCJ policy. These complaints sometimes result in formula and other medical supplies being restored but when they do, they are restored only temporarily. HULIPAS, SPEER and WILLIAMS should never deprive CONNORS of formula. Nor should they or their staff deprive CONNORS of formula until he files a complaint, only to restore it to satisfy the complaint and deprive him again later. There is no medical or legal basis for HULIPAS, SPEER, or WILLIAMS to interrupt or withhold CONNORS's medically prescribed diet.

37.   HULIPAS, SPEER, and their staff had continually mocked, joked, or laughed at CONNORS because of his medical condition. They think it's funny that he cannot control his bowels and that he needs a special diet. CONNORS feels shame and humiliation when he is treated by HULIPAS, SPEER, and their staff in this way.

38.   Blood and digestive waste will seep out of his anus uncontrollably. CONNORS has

had seepage while walking in prison hallways. Prison staff and other inmates have mocked and laughed at CONNORS because of the leakage, and they continue to do so on later occasions as he is seen as a joke. This humiliates and embarrasses CONNORS.

39.    On one occasion, when CONNORS had digestive waste and blood seeping out of his anus, CONNORS went to the Darrington Unit medical office for healthcare. HULIPAS and nurses were present. HULIPAS demanded that CONNORS lift his medical smock to show the nurses the leakage, which CONNORS did, but HULIPAS and the nurses laughed at CONNORS when they saw his condition.

40.    On several occasions, CONNORS has left the Darrington Unit medical office prematurely—before the reason for his visit had concluded—after being mocked by HULIPAS, SPEER, and their staff. On one occasion, CONNORS was mocked by SPEER the moment he appeared at the medical office. CONNORS was not ready to be humiliated so he left without seeking medical aid. On one occasion, CONNORS sought formula from medical staff denied his request and told CONNORS to get formula from SPEER. CONNORS then went to SPEER who denied his request and told CONNORS to get formula from other medical staff. CONNORS is treated like a ping pong ball and denied necessary medical supplies. SPEER has denied giving CONNORS formula on one or more occasions when CONNORS could see that Osmolite was in stock in the Darrington Unit medical office.

41.   HULIPAS and SPEER have deprived CONNORS of formula immediately after he verbally complained about their mistreatment of him. CONNORS was therefore forced to endure mistreatment because he knows that if he makes formal or informal complaints, he will suffer retaliation for weeks or longer until he is vindicated by the complaint process. CONNORS has suffered as the victim of HULIPAS's and SPEER's and now WILLIAMS' games until he suffered too much and sought legal counsel approximately eight weeks before the filing of the instant Complaint.

42.   Not coincidentally, CONNORS had been deprived of formula for many, many weeks. CONNORS was deprived of formula because HULIPAS and SPEER learned that CONNORS was searching for an attorney.

43.     When CONNORS has been given formula, he is not allowed to keep cans of formula in his living area purportedly for prison security reasons. A can of formula holds eight ounces. However, he is allowed to keep twelve-ounce cans of soda in his living area. CONNORS was denied permission to keep cans of formula as a method of control so that HULIPAS and SPEER can more easily harm and humiliate CONNORS by depriving him of formula. If CONNORS had a stock of formula in his living area, HULIPAS and SPEER would have less control over him.

DEFENDANTS DEPRIVE CONNORS OF MEDICAL CLEANING SUPPLIES

44.   CONNORS requires other medical supplies including gauze pads to clean his stoma and keep it hygienic, to ward off infection and to prevent foreign objects from entering his gut. He cannot use other cleaning materials, such as toilet paper, because they might cause infection and toilet paper in particular easily breaks apart. It is difficult for CONNORS to keep bits of toilet paper out of his stoma. CONNORS has been advised by medical specialists only to use gauze.

45.   On July 23, 2016, CONNORS requested two hundred (200) gauze pads among other medical supplies. His 200-quantity request specifically stated: "Ileostomy & Uro supplies needed for July – (30 days) Aug – due to heat. See attached list. Supplies have been issued as listed for the past 5 yrs." 46.   HULIPAS and SPEER routinely order inadequate quantities of gauze pads and other supplies. For example, on Sept. 22, 2016, HULIPAS ordered "ten (10) gauze pads as a one month supply (one pad to be used every three days)" among other supplies. Ten pads per month is 120 pads for one year. 47.   On Oct. 25, 2016, UTMB physician assistant Jean Clark instead prescribed CONNORS one hundred fifty (150) gauze pads 4"x4" for one year. Later, Clark specifically doubled HULIPAS's order of 120 pads resulting in an order for 240 pads because

HULIPAS's order was perilously deficient. Gauze pads are cheap and CONNORS should not be required to use toilet paper to clean his stoma because he ran out of pads.

48.   HULIPAS's 10-pad order from Sept. 22 is inadequate for several reasons. Hot weather, particularly in summer months, causes CONNORS to sweat more and he needs to clean himself more frequently. CONNORS also needs to use gauze pads as limited protection against blood and digestive waste seeping out of his anus, which is a condition caused by HULIPAS and SPEER as described above. Further, HULIPAS, SPEER, and other medical staff under their supervision and control, sometimes fail to timely order or withhold gauze resulting in days or weeks without any gauze pads. On such occasions, CONNORS is forced to use toilet paper and risks another medical emergency. CONNORS needs at least 200 pads annually and seeks Clark's most recent order of 240 pads annually.

49.   HULIPAS and SPEER are not specialists with CONNORS's medical condition and they have a history of tormenting CONNORS. Jean Clark, who works directly with CONNORS's specialist doctors, is the proper medical authority for CONNORS's medical supply needs.

DEFENDANTS DEPRIVE CONNORS OF DETROL LA FOR HIM TO CONTROL URINATION

50.   Surgeons unintentionally damaged CONNORS's bladder during his 2011 protocolectomy surgery. As a result, CONNORS cannot control his bladder. He has been prescribed Detrol LA, a pharmaceutical pill, that suppresses his urination at night, but HULIPAS and SPEER, and their staff, routinely fail to give CONNORS this medication as part of their harassment campaign.

51.   CONNORS will urinate while he sleeps when he does not take Detrol LA. The urine typically causes a rash and a break out of pimples as he sleeps in it all night. CONNORS needs to clean his clothes and sheets more frequently as a result. 52.   There is no medical or penological purpose in denying CONNORS of this medication. Clearly, HULIPAS and SPEER denied him

this medication to torment him by knowing that he will wet himself while he sleeps without it.

**DEFENDANTS DENY CONNORS'S REASONABLE REQUEST FOR A LONG CATHETER FOR HIM TO WALK NORMALLY**

53.   CONNORS cannot control his bladder at any time so during awake hours he wears a penile catheter that empties urine into a uro-bag. CONNORS is given a short catheter tube that requires the uro-bag to attach high on his thigh, which inhibits his ability to walk.

54.   CONNORS has made repeated requests for a long catheter tube that would allow him to attach the uro-bag lower on his leg so that he can walk normally. HULIPAS and SPEER continually refused to provide a long catheter tube.

55.   The short tube creates a physical handicap for CONNORS. It also causes emotional distress and mental anguish by being unable to walk normally, and it causes further distress and anguish because CONNORS knows that HULIPAS and SPEER refuse to honor such basic and inexpensive medical supplies as part of their campaign to harass and torment CONNORS.

**DEFENDANTS DEPRIVE CONNORS OF ACID REFLUX MEDICATION**

56.   CONNORS also suffers from acid reflux as a complication to his gastro-intestinal maladies. Acid reflux is a painful condition where the top of the stomach leaks acids and other gastric fluids into the throat and esophagus. Acid reflux that is not treated can cause severe injuries and death.

57.   CONNORS occasionally suffers a painful, burning sensation in his throat and chest as a result of acid reflux. This sensation does not occur when Defendants provide medication. HULIPAS and SPEER sometimes denied CONNORS's requests for acid reflux medication for no known reason, which CONNORS alleges is actually due to their harassment campaign.

**TDCJ AND UTMB DO NOT HAVE AN OFFICIAL LOW-RESIDUE DIET**

58.   TDCJ and UTMB have a variety of special diets for their diverse prison population. These special diets only include: Diet for Health, Clear Liquid, Dental, Gluten-Restricted,

Hypercaloric, Protein-Restricted, Dialysis, and several non-therapeutic diets for juvenile, pregnant, and religious inmates.

59.     TDCJ's and UTMB's failure to have an explicit Low-Residue Diet contributes to CONNORS's injuries. On those occasions when HULIPAS and SPEER are not harassing CONNORS, other staff at the Darrington Unit, now the Estelle Unit,  were ignorant to CONNORS's dietary needs and they fail to give him appropriate food.

60.     This typically occurs during "lockdown" but may occur at other times. Officials at the Darrington Unit and Estelle Unit occasionally put the facility in lockdown. Lockdown takes place approximately every six months and other times in unplanned response to security or penological concerns. Lockdown restricts CONNORS and other inmates from leaving their living area. Lockdowns can last for days or weeks.

61.     Even during those times when HULIPAS and/or SPEER provide CONNORS with formula, that formula stopped when Darrington Unit or the Estelle Unit is on lockdown. Then CONNORS is typically given peppered meat or peanut butter sandwiches as meals. These foods and other similar meals given during lockdown are dangerous for CONNORS to eat due to his medical condition. Yet, CONNORS has no choice but to eat these dangerous foods because TDCJ and UTMB do not provide inmates with medical needs a low-residue diet during lockdown.

NONPROFIT VOLUNTEERS HAVE HAD VARIABLE SUCCESS ADVOCATING FOR CONNORS

62.     The Inmate Assistance League ("IAL") is a nonprofit charitable organization founded to help inmates in Texas and other regions with medical and other needs. Its co-founder, Linda Pugh, has advocated on behalf of inmates for around thirty years. 63.   Ms. Pugh has a long-standing relationship with TDCJ in her professional role and has discussed inmate health and safety matters with Bryan Collier, its executive director, and Lannette Linthicum, M.D., its medical director. (Collier and Linthicum have supervisory and policy-making authority over Darrington

Unit and Estelle Unit.)

64.   Ms. Pugh began advocating for CONNORS beginning approximately July 2016 for the reasons complained about in this Complaint. Ms. Pugh had called administrators and authorities at Darrington Unit, UTMB, and TDCJ, more than fifty times on CONNORS's behalf. Some phone calls eventually result in CONNORS's medical needs being met but sometimes her calls have no effect or result only in a short-term beneficial effect.

65.   Ms. Pugh has a quarterly meeting with Dr. Linthicum and other TDCJ and UTMB administrators and policy makers. Ms. Pugh has repeatedly brought to their attention the failure of HALUPIS, SPEER, and other medical staff at Darrington Unit to provide CONNORS with needed formula and other medical supplies. Despite any verbal resolution to ensure CONNORS is treated appropriately, that resolve either does not manifest or beneficial changes are brief only to return to the usual inappropriate diet, inadequate supplies, and wrongful treatment.

66.   Ms. Pugh's intervention has helped CONNORS on some occasions but she lacks the power of the state to ensure that CONNORS civil rights and medical needs are properly honored. Instead, it appears that Ms. Pugh's efforts to help CONNORS has in fact delayed permanent and appropriate resolution that has become necessary to litigate.

## VI.   CAUSES OF ACTION CAUSE

### No. -1- Discrimination on Basis of Disability Alleged against TDCJ and UTMB

67.   Congress enacted the Americans with Disabilities Act ("ADA") and later the ADA Amendments Act of 2008 ("ADAAA") upon finding inter alia that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101.

68.   At all relevant times and as described herein, CONNORS was a "qualified individual" as defined under the ADA and ADAAA1 and Section 504 of the Rehabilitation Act ("RA") of 1973,2 because of his multiple physical maladies including his: a.   Physical disabilities due to his

protocolectomy, including his inability to defecate. b. Open stoma that require regular care and cleaning. c. Required use of an ileostomy bag. d. Required medical "low-residue diet." e. Damaged bladder and inability to control urination, including required use of a uro-bag. f. Acid reflux.

69. As a qualified individual, at all relevant times and as described herein, CONNORS was a. An individual with a disability. b. Qualified to participate in or receive the benefit of TDCJ's and UTMB's medical health services, programs, or activities. c. Entitled to be provided with a special "low-residue diet" and medical supplies as prescribed by the surgeons and other physicians who are specialists in CONNORS's specific medical conditions. d. Entitled to be provided with ordinary and reasonable care for other maladies such as acid reflux medication for his acid reflux condition. e. Either excluded from participation in or denied the benefits of TDCJ's and UTMB's medical services and programs, including being denied an appropriate diet and supplies. f. Such exclusion, denial of benefits or discrimination was due to his disability. 42 U.S.C. § 12131(2). 2 29 U.S.C. § 794. 28 C.F.R. 42.540(k).

70. TDCJ and UTMB are each a public entity under Title II of the ADA. 42 U.S.C. § 12131(1)(A). Title II of the ADA applies generally to jail "services, programs, or activities." 42 U.S.C. § 12132. Therefore, TDCJ and UTMB jails and mental health services are covered under Title II of the ADA.

71. TDCJ and UTMB are also liable through respondeat superior under Title II of the ADA for the unlawful acts of their agents and/or employees.

72. Plaintiff is informed and believes, and thereon alleges, that TDCJ and UTMB receive federal assistance and funds, and are therefore subject to the Rehabilitation Act, 29 U.S.C. § 794. TDCJ and UTMB are within the mandate of the RA that no person with a disability may be "excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794. 73. Under the ADA, TDCJ and UTMB are mandated

to develop an effective, integrated, comprehensive system for the delivery of all services to persons with physical disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their control are protected.

74.     As described herein, TDCJ and UTMB failed to reasonably accommodate CONNORS's disability while jailing him and denying him medical care, causing him to suffer greater injury in the process than other inmates, including repeated hospitalizations, surgeries, and ongoing  serious risk of permanent injury or death. TDCJ's and UTMB's failures to accommodate CONNORS's disability include but are not limited to:

a.   Causing the violation of CONNORS's rights through all customs, policies, and practices identified above.

b.   Failure to use lawful and appropriate policies, practices, and procedures for a physically disabled person in under the circumstances.

c.   Failure to have a policy and adequate staff training for inmates who are prescribed a low residue diet. d.   Failure to provide CONNORS with all items medically prescribed to him.

e.   Failure to provide CONNORS with medical care for items unrelated to his protocolectomy, such as a longer catheter so that he can walk normally, and acid reflux medication to prevent his throat from burning.

f.   Failure to provide CONNORS with competent and appropriate medical care.

g.   Failure to develop an effective, integrated, comprehensive system for the delivery of all services to persons with physical disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its control are protected.

h.   Failure to have supervisory staff intervene effectively through appropriate action, including behavior-correcting discipline, after CONNORS made repeated complaints about HULIPAS and SPEER. 75.   As a direct and proximate result of TDCJ's and UTMB's violations of the ADA, ADAAA, and RA, CONNORS suffered more pain and punishment than members of the general

population at each jail facility. Therefore, CONNORS sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorney fees.

CAUSE No. -2- Deliberate Indifference – Failure to Provide Medical Care Eighth Amendment Violations | 42 U.S.C. § 1983 Alleged against all defendants

76.    CONNORS has a clearly established right to be provided with appropriate and adequate medical care including a medically prescribed diet that meets his nutritional needs.

77.    All defendants know  a.   CONNORS survived cancer treatment that included a protocolectomy. b.   CONNORS is and was prescribed a "low-residue diet" including but not limited to three servings of Boost (or, as an inferior alternative, Osmolite) daily. c.   Not receiving the prescribed low-residue diet puts CONNORS's health and life in serious jeopardy. d.   CONNORS does not receive the prescribed low-residue diet while on lockdown. e.   When CONNORS has not received the prescribed low-residue diet, CONNORS has been hospitalized, including surgery, to save his life. f.   When CONNORS has not received the prescribed low-residue diet, CONNORS is at risk of multiple severe symptoms of bowel obstructions including extreme pain and suffering, abdominal swelling and distension, dizziness, fever, and vomiting. g.   When CONNORS has not received the prescribed low-residue diet, CONNORS routinely gets blood or digestive waste leaking out his anus. h.   CONNORS has been prescribed other medical supplies, including gauze, to tend to his medical needs such as cleaning his stoma. i.   CONNORS cannot adequately clean his stoma with anything but gauze. j.   When CONNORS has not received adequate gauze, he risks infection and other complications by cleaning his stoma with anything else or by not cleaning it. k.   When CONNORS does not receive other adequate supplies, like adequate wafers, he cannot properly care for his stoma and consequences therefrom. l.   CONNORS cannot control his bladder that requires him to have a regular supply of Detrol LA. m.   When CONNORS is denied Detrol LA, he will urinate in his sleep resulting in a rash and pimple break outs. n.   CONNORS suffers from acid reflux. o.   When CONNORS is denied acid

reflux medication, he suffers pain and burning in his throat and esophagus. p.   Acid reflux, if left untreated, can cause serious injury. q.   CONNORS cannot walk unhindered when his uro-bag is strapped on his thigh. r.   A suitably long catheter would allow CONNORS to walk normally. s.   CONNORS has made several informal complaints to HULIPAS, SPEER, WILLIAMS and their staff, and CONNORS has made several formal complaints to TDCJ and/or UTMB regarding his several complaints contained herein. 78.   CONNORS suffered damages, pain and suffering, multiple hospitalizations, multiple surgeries, emotional distress, mental anguish, anxiety, depression, and deprivation of   constitutional rights because of all defendants deliberate indifference and/or callous disregard for CONNORS's need for medical care and treatment, and their disregard and indifference to this need.

79.   The conduct of the individual defendants entitles CONNORS punitive damages and penalties allowable under 42 U.S.C. § 1983.

CAUSE No. -3- Retaliation for Protected Speech First Amendment Violation

42 U.S.C. § 1983 Alleged against HULIPAS and SPEER

80.   CONNORS as a clearly established right not to be retaliated against for petitioning the government, or its employees and agents, for redress of his grievances against them.

81.   CONNORS was engaged in First Amendment protected speech activity when he made formal and informal complaints against HULIPAS and SPEER. 82.   HULIPAS and SPEER, as a result of CONNORS's complaints, worsened the conditions that CONNORS complained about. For example, CONNORS's complaint about undressing in front of giggling nurses resulted in refusal to provide CONNORS with Osmolite. 83.   CONNORS has been chilled in seeking medical care and making further complaints against HULIPAS and SPEER, as would a person of ordinary sensitivity, because CONNORS knows that his life is threatened through HULIPAS's and SPEER's said abuse of authority. HULIPAS and SPEER had CONNORS transferred in retaliation for filing the instant lawsuit.

## VII. QUALIFIED IMMUNITY

84.   The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. See Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084 (1996). A party seeking to avoid a qualified immunity defense must prove the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. See Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980).

85.   Prisoners have a constitutional right to adequate medical care for their serious medical needs. Bell v. Wolfish, 441 U.S. 520 (1979). The Constitution requires that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health. Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999); Berry v. Brady, 192 F.3d 504, 507-08 (5th Cir. 1999); see also Green v. Ferrell, 801 F.2d 765, 770-71 (5th Cir. 1986); Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

86.   Through the various acts and omissions described herein, among others, WILLIAMS, HULIPAS and SPEER were each aware that CONNORS had specific and necessary medical needs ordered by medical specialists and CONNORS was not getting those needs met by HULIPAS and SPEER who had the duty and authority to have those needs met. Any reasonable medical staff would follow the prescription of medical specialists and not deprive a patient of their medical needs in retaliation for complaints or for any reason that was not medically sound. Therefore, Defendants are not entitled to qualified immunity.

## VIII.   DAMAGES

87.   As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, CONNORS sustained physical injuries, pain and suffering, emotional distress, mental anguish, violation of his constitutional rights, and economic damages, and will likely continue to

sustain these injuries for the indefinite future.

## IX. REQUEST FOR RELIEF

88.    WHEREFORE, CONNORS requests that this Court enter judgment in favor of himself against each Defendant, jointly and severally, on all counts, and for the following additional relief:

a.   Actual damages that may be allowed under federal law in an amount according to proof and which is fair, just, and reasonable.

b.   Punitive damages against all individual defendants, that may be allowed under federal law which is fair, just, and reasonable.

c.    Temporary, Preliminary, and Permanent injunctive relief to prevent HALUPIS, SPEER, WILLIAMS, CARTER, COLLIER, O'HARE, TDCJ and the STATE OF TEXAS and any other person from withholding any prescribed medical supply including diet, and to require them and their successors to provide un-prescribed medical supplies as medically appropriate.

d.    In the alternative to the above-requested permanent injunctive relief, CONNORS requests habeas corpus release from prison under compassionate care doctrines so that CONNORS does not die in prison due to wholly preventable medical conditions and a deliberately indifferent medical staff.

e.   Reasonable attorney fees and costs of suit pursuant to 42 U.S.C. § 1988. f.   All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983, 1988, and 12205; Title II of the ADA; 29 U.S.C. §§ 794 and 794a; and as otherwise may be allowed by federal law;

g.   Respondeat superior liability pursuant to ADA, ADAAA, and RA;

h.   Interest, both pre- and post-judgment, as permitted by law;

i.   Cost of court and such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,
KALLINEN LAW PLLC

/s/ Randall L. Kallinen
Randall L. Kallinen
Attorney-In-Charge
State Bar of Texas No. 00790995
Southern District of Texas Bar No.: 19417
Admitted, U.S. Supreme Court, 5th U.S. Circuit Court of Appeals,
& Southern, Eastern & Western Districts of TX
511 Broadway Street
Houston, Texas 77012
Telephone:    713.320.3785
FAX:             713.893.6737
Email: AttorneyKallinen@aol.com
Attorney for Plaintiff

Respectfully submitted,

/s/ Jerold D. Friedman
Jerold D. Friedman
California SBN 290434
SDTX Federal ID 2117436

LAW OFFICE OF JEROLD D. FRIEDMAN
17515 Spring-Cypress Rd. Suite C-360
Cypress, TX 77429
(281) 810-8812
fax (281) 667-3506
jerry@activistlaw.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been transmitted to the all counsel appearing in this cause and pro se parties on this the 6th day of November 2017, by filing with the ECF System of the United States District Court for the Southern District of Texas.

/s/ Randall L. Kallinen
Randall L. Kallinen