IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KEVIN CONNORS,<br><br>    *Plaintiff,*<br><br>v.<br><br>EDGAR HULIPAS, et al.,<br><br>    *Defendants.* | CIVIL ACTION NO.: 4:17-cv-1512 |

**PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE
RELIEF AND PRELIMINARY INJUNCTION**

Pursuant to FED.R.CIV.P. 65, Plaintiff Kevin Connors ("Mr. Connors") hereby moves the Court to issue an Emergency Injunctive Relief and Preliminary Injunction requiring Defendants Texas Department of Criminal Justice ("TDCJ") and University of Texas Medical Branch ("UTMB") to faithfully execute all present and future dietary prescriptions issued by physicians who treat and have treated Mr. Connors, and immediately provide him with other urgent and necessary medical care. In support of his motion, Mr. Connors shows the Court as follows:

//

//

//

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................3

I. STATEMENT OF FACTS ................................................................................................4

II. ARGUMENT ...................................................................................................................9

    A. Request for an Immediate Diagnosis and Treatment .............................................11

        1. A Substantial Likelihood of Success on the Merits of His Case ...............11

        2. A Substantial Threat That Failure to Grant the Order Will Result ...........14
           in Irreparable Injury

        3. The Threatened Injury Outweighs Any Damage That the Injunction ......14
           Will Cause Defendants

        4. The Injunction Will Not Have an Adverse Effect on the Public Interest ..15

    B. Request for a Low-Residue Diet.............................................................................15

III. CONCLUSION .............................................................................................................18

CERTIFICATE OF SERVICE ...........................................................................................19

CERTIFICATE OF CONFERENCE..................................................................................19

## **TABLE OF AUTHORITIES**

*Balla v. Idaho State Bd. of Corrections*
    595 F.Supp. 1558 (D.C. Idaho 1984)..................................................................................16

*Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448............................................................10
    (5th Cir. 2005)

*Blanks v. Southwestern Bell Communications*, 310 F.3d 398............................................................9
    (5th Cir. 2002)

*Brewster v. Dretke* ......................................................................................................................10
    587 F.3d 764 (5th Cir. 2009)

*Domino v. Texas Dep't of Criminal Justice*..................................................................................10
    239 F.3d 752 (5th Cir. 2001)

*Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*............................................9
    762 F.2d 464 (5th Cir. 1985)

*Estelle v. Gamble* .......................................................................................................................10
    429 U.S. 97 (1976)

*Farmer v. Brennan*
    511 U.S. 825 (1994)................................................................................................................10, 17

*Gobert v. Caldwell*
    463 F.3d 339 (5th Cir. 2006) ..................................................................................................10

*Ledee v. Morr*
    No. 1:14-CV-00096 (W.D. La Mar. 21, 2016) ......................................................................17

*Marquez v. Woody* ......................................................................................................................15
    10-40378 (5th Cir. Sept. 6, 2011)

*McDonald v. Hardy*
    821 F.3d 882 (7th Cir. 2016) ..................................................................................................17

*Pace v. Bogalusa IS D*, 403 F.3d 272 ...........................................................................................9
    (5th Cir. 2005)

*Wilson v. Seiter* ..........................................................................................................................10
    501 U.S. 294 (1991)

*Women's Med. Ctr. v. Bell* ...........................................................................................................9
    248 F.3d 411 (5th Cir. 2001)


Eighth Amendment ................................................................................................................10, 14

Fourteenth Amendment ..................................................................................................................9

## I. STATEMENT OF FACTS

1. Mr. Connors is an inmate in the custody of Defendants Texas Dept. of Criminal Justice ("TDCJ") and University of Texas Medical Branch ("UTMB") at the Estelle Unit in Huntsville, Texas, and was most recently transferred to the Estelle Unit on or about May 30, 2019.[1] Mr. Connors had most of his colon and rectum removed that left him with a stoma (opening by his ileum/small intestine and the outside), and that requires him to use an ileostomy bag.[2]

2. Digestive fluid from his small intestine passes through the stoma and drains into the ileostomy bag.[3] Solids bypass the stoma and get impacted in what's left of Mr. Connors's colon, which threatens his life.[4] Consequently, Mr. Connors has been prescribed a low-residue diet by several UTMB oncology and gastroenterology specialists.[5] "Patient is to be on a low residue diet so his intestines work properly."[6] "Please place patient on low residue diet."[7]

3. Dr. Jerry Vlasak, Mr. Connors's medical expert, wrote, "[A low-residue diet] is critical treatment to prevent recurrence of acute illness, with possible resulting complications of inflammatory bowel disease, including life-threatening conditions such as pelvic abscess, for which Mr. Connors has been treated previously."[8] This affidavit was in support of a temporary injunction that was mooted by Defendants when they transferred him from the Darrington Unit to the Estelle Unit.[9] Dr. Vlasak later reviewed substantial medical records of Mr. Connors and produced an expert report that says, in relevant part, "A low-residue diet, that is a diet low in

---

[1] Exh.1-Affidavit of Kevin Connors, ¶ 8.
[2] *Id.*, ¶¶ 4-5.
[3] *Id.*, ¶ 5.
[4] *Id.*, ¶ 6.
[5] *Id.*
[6] Ex.2-Stephen Antwi, M.D., Bates 110, 125.
[7] Ex.2-Isaac Kwarteng, D.O., Bates 149.
[8] Ex.3-Affidavit of Jerry Vlasak, M.D., ¶ 5.
[9] Ex.4-Case No. 4:17-cv-1512, Doc. No. 3.

roughage, is normally prescribed for patients with an ileostomy. Foods high in roughage, **and to be avoided**, include whole grains, raw vegetables and fruit."[10] (Emphasis in the original.)

4. Mr. Connors must not eat high-fiber or high-roughage foods.[11] Defendants' medical expert in the related case, Dr. Ernestine Julye, who is the medical director of the Estelle Unit, admitted this to jailers and nurses when discussing Mr. Connors's diet, "Required to avoid these foods. While on a low-residue diet, these foods or drinks are generally avoided: Seeds, nuts; Whole grain products including whole-grain breads, cereals, pasta; Certain cooked vegetables including … corn; Beans."[12]

5. Mr. Connors needs a low-residue diet to avoid serious, painful, and life-threatening bowel obstructions and pelvic abscesses. Over the course of Mr. Connors's treatment while in TDCJ custody, Defendants' own medical specialists wrote: "Please provide the patient with a low residue diet to prevent recurrent complications with rectal obstruction, which can likely result in another rectal infection and abscess formation that would likely result in patient to be admitted to a hospital necessitating long term antibiotics and surgical drainage, which may be a very morbid procedure for the patient."[13] "Abdominal Pain—Low residual diet recommended."[14] An emergency patient intake form says the same: "Obs w/poor diet 'They don't give me low residue food,'" "fever, vomiting, pain, cramping, yellow diarrhea, exacerbated by food," and historical note: "2012 rectal abscess."[15]

---

[10] Ex.5-Expert Report of Jerry Vlasak, M.D., at 5.
[11] Ex.1, ¶ 6.
[12] Ex.2-Ernestine Julye, M.D., Bates 3368-3370.
[13] Ex.2-Siva Mannem, Medical Oncology Fellow, Bates 194.
[14] Ex.2-Daniel Maloney, R.N., Bates 102.
[15] Ex.2-Huntsville Memorial Hospital Emergency Intake Form, Bates 2112.

6.  Linda Pugh, whose nonprofit organization advocates for Texas inmates in need of medical care,[16] and who intervened on Mr. Connors's behalf,[17] wrote, "Mr. Connors must have a low-fiber or low-residue diet. He has had obstructions in his gut when TDCJ fails to provide him with an appropriate diet. These obstructions have caused three medical emergencies that I specifically remember because they sent him into surgery to save his life. The only way to prevent these obstructions is an appropriate diet."[18] Before Mr. Connors filed suit, Ms. Pugh placed between 50-100 calls to the Defendants trying to help Mr. Connors.[19]

7.  Against overwhelming evidence that Mr. Connors must have a low-residue diet, Defendants continue to deprive him of such diet. Worse, since at least May 30, 2019, every meal delivered to Mr. Connors has included the high-fiber foods he must not eat including corn, beans, bread, peanuts, oats, spaghetti, and goulash.[20] These foods are each on the "Required to avoid" list, *supra*.

8.  Throughout his incarceration, Mr. Connors has repeatedly complained to prison and hospital officials about the improper diet being given to him, his pain and suffering, digestive waste, blood and pus leaking through his anus, and the life-threatening consequences if he is not provided with low-residue diet.[21] Mr. Connors has complained to medical and prison staff over the last two months and still he has not been given his dietary prescription on any day since May 30, 2019.[22] Mr. Connors has told prison officials that he will need to be hospitalized unless he receives the appropriate diet.[23] Mr. Connors has been promised by the Estelle Unit warden and

---

[16] Ex.6-Affidavit of Linda Pugh, ¶ 2.
[17] *Id*., ¶ 4.
[18] *Id*., ¶ 8-9.
[19] *Id*., ¶ 12.
[20] Ex.1, ¶ 9.
[21] *Id*., ¶ 12.
[22] *Id*.
[23] *Id*.

kitchen captain that the dialysis diet (which is not low-residue) would be delivered, probably to try to appease Mr. Connors, but even on the same day as the promise is made Mr. Connors is given only the improper high-fiber foods.[24] Over several years that Mr. Connors has been in TDCJ custody and given improper food, he has been mocked and ridiculed by TDCJ and UTMB staff when he suffered visible symptoms, namely digestive leakage.[25]

9. Dr. Vlasak, after reviewing Mr. Connors's medical records, noted the utter lack of care Defendants have for Mr. Connors, "As the evidence I reviewed shows, Mr. Connors was routinely and repeatedly denied the prescribed low-residue diet […]"[26] "Additionally, a diet high in roughage can initiate or precipitate an obstruction of the intestines, a painful and potentially fatal condition that frequently requires surgery to alleviate. Rectal and pelvic abscesses, also potentially fatal, can also occur if a diet high in roughage is consumed."[27] Mr. Connors's medical expert predicts that any other diet will result in "acute illness, with possible resulting complications of inflammatory bowel disease, including life-threatening conditions such as pelvic abscesses, for which Mr. Connors has been treated previously."[28]

10. Mr. Connors has been begging for a proper diet so that he does not suffer and die since before he filed suit in his related case on May 16, 2017.[29] Mr. Connors was transferred out of his Darrington Unit to the current Estelle Unit soon after filing suit thereby mooting his request for injunctive relief against individual defendant employees—his primary care physician and nurse practitioner.[30]

---

[24] *Id.*
[25] *Id.*, at ¶ 21.
[26] Vlasak Report, at 6.
[27] *Id.*
[28] Affidavit of Jerry Vlasak, M.D., ¶ 5 (Vlasak Affidavit).
[29] Case 4:17-cv-1512, Doc. No. 1.
[30] Case 4:17-cv-1512, Doc. No. 68-1, ¶¶ 1-3.

11.     Since May 30, 2019, Mr. Connors adverse symptoms characteristic of a wrongful diet have increased.[31] These symptoms include pain and swelling in his abdomen, sweating regardless of ambient temperature, dizziness, and digestive leakage out of his anus sometimes with blood and pus.[32] Mr. Connors is afraid of leakage enough to decline his attorney's request to attend and assist defendants' medical expert's deposition.[33]

12.     On July 19, 2019, Mr. Connors had an episode of severe leakage while being visited by Victoria Connors.[34] [35] The leakage contained or is believed to have contained blood and pus.[36] [37] The leakage smelled foul, pungent, and uncharacteristic of normal digestive waste or feces.[38] [39] Mr. Connors was given no substantive treatment at the Estelle Unit.[40] Mr. Connors has been promised by TDCJ medical and prison staff that he would be sent to medical specialists at UTMB Galveston but he has not been sent.[41]

13.     Based on his medical condition, including numerous surgeries and hospitalizations for bowel obstructions, Mr. Connors is in immediate need of hospitalization to save his life.[42] [43]

14.     Mr. Connors seeks the following:

```
a. Immediate diagnosis and treatment by a gastroenterological
   specialist.
b. Low-Residue Diet, every snack and meal, every day, until a
   preliminary injunction on the same matter can be heard.
```

---

[31] Ex.1, ¶ 11.
[32] *Id*.
[33] *Id*., ¶ 19.
[34] *Id*., ¶ 13.
[35] Ex.7-Affidavit of Victoria Connors, ¶¶ 2-5.
[36] Ex.1, ¶¶ 11, 13.
[37] Ex.7, ¶¶ 4, 6.
[38] Ex.1, ¶ 13.
[39] Ex.7, ¶¶ 5, 10.
[40] Ex.1, ¶ 15.
[41] *Id*., ¶ 16.
[42] *Id*.
[43] Ex.3, ¶ 6.

## II.  ARGUMENT

16. "In order for the court to grant injunctive relief, a plaintiff must prove (1) a substantial likelihood of success on the merits of his case; (2) a substantial threat that failure to grant the order will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause defendants; and (4) the injunction will not have an adverse effect on the public interest." *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418-20 (5th Cir. 2001). "Plaintiff must prove all four elements, and the failure to prove any one of the elements will result in denial of the motion." *Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

16. Mr. Connors's complaints pertain both to Title II of the Americans with Disabilities Act, Sec. 504 of the Rehabilitation Act, and from the Eighth Amendment prohibition of cruel and unusual punishment. "To state a claim under the ADA, a plaintiff must allege that (1) he is a qualified individual; (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity; and (3) that the exclusion, denial, or discrimination was because of his disability." *Blanks v. Southwestern Bell Communications*, 310 F.3d 398, 400 (5th Cir. 2002). The only material difference applicable here between the ADA and Sec. 504 is their respective causation requirements. *Pace v. Bogalusa IS D*, 403 F.3d 272, 288 (5th Cir. 2005). "Section 504 of the Rehabilitation Act provides that no otherwise qualified individual with a disability in the United States … shall, ***solely by reason of her or his disability***, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…. By contrast, under Title II of the ADA, discrimination need not be the sole reason for the exclusion of or denial of

benefits to the plaintiff." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005) (internal citations and quotation marks omitted).

17. The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, requires that inmates receive adequate medical care. See *Estelle v. Gamble*, 429 U.S. 97 (1976). "Prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction of pain." *Brewster v. Dretke*, 587 F.3d 764, 769-70 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To establish deliberate indifference in violation of the Eighth Amendment, a prisoner must show that (1) the defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted).

A. **Request for An Immediate Diagnosis and Treatment**

A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS CASE

18. [1.1] Mr. Connors is clearly a qualified individual under the ADA and Sec. 504. He had his colon and rectum removed that has resulted in several physical and medical disabilities, including the need for a special low-residue diet, or he risks injury and death.

19. [1.2] Mr. Connors is now excluded from participation in or denied the benefits of services, programs, or activities of a public entity, to wit, Mr. Connors is in immediate need of hospital care by a gastroenterologist and has been forced to wait *since at least July 19, 2019*. As an inmate in custody of Defendant TDCJ, Mr. Connors cannot seek medical care on his own.

20. [1.3] Mr. Connors has been excluded, denied, and discriminated against by Defendants because of his disability. UTMB medical specialists have prescribed a specific diet for Mr. Connors that Defendants have consistently failed to provide. Defendants provide diet prescriptions to inmates with other disabilities. These facts indicate that if Mr. Connors had a different medical condition, a different disability, Defendants might accommodate him, but they have refused to accommodate him with this disability. The harmful diet that Mr. Connors is forced to eat has caused past and current severe and life-threatening medical conditions. Further, Defendants have mocked and ridiculed Mr. Connors when he would have symptoms of these conditions, namely when he leaks digestive waste, blood, or pus from his anus.

21. [2.1] On the higher Eighth Amendment standard, first, Plaintiff must prove that Defendants are aware of the facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn.

22. Defendants' treating physicians who have direct experience with Mr. Connors have plainly laid out that he is susceptible to intestinal disease that, if left untreated, will result in his hospitalization or death. None is so clear as Dr. Mannem's admonition, *"Please provide the patient with a low residue diet to prevent recurrent complications with rectal obstruction, **which can likely result in another rectal infection and abscess formation that would likely result in patient to be admitted to a hospital necessitating long term antibiotics and surgical drainage, which may be a very morbid procedure for the patient,"*** (emphasis added). Dr. Mannem

predicted that the failure to provide Mr. Connors with the low-residue diet would result in his current crisis. Dr. Mannem is not Defendants' only specialist who has documented Mr. Connors's susceptibility to serious and life-threatening bowel conditions, but his remarks emphasize the links between diet, obstruction, infection, abscess, hospitalization, and morbidity.

23. There is no shortage of documentation that Mr. Connors has serious medical conditions. His medical record produced by Defendants in his related case spans more than 9,000 pages. He has been hospitalized for the same or similar conditions approximately twelve times since his colon and rectum were removed in 2011, which averages to more than hospitalization annually. Mr. Connors has had five surgeries or other major medical procedures to treat an obstructed bowel or pelvic abscess while in TDCJ custody over this same date range.

24. Presently, Mr. Connors has had blood and pus leaking from his anus and it's been increasing in volume and frequency over the last two months while at the Estelle Unit. He had a severe episode there on July 19, 2019 with a peculiar pungent odor that drove prison guards away. Mr. Connors has a confluence of tightly related facts that show his present condition is dangerous. Any person who witnesses Mr. Connors's blood, pus, and peculiar odor will immediately understand Mr. Connors is in immediate need of a medical specialist's care, care which evidently the Estelle Unit infirmary could not offer because they did nothing for him when he was there on July 19.

25. [2.2] Second, Plaintiff must prove that Defendants actually draw an inference that such potential for harm existed.

26. Defendants are on actual notice of the potential for harm that exists if Mr. Connors is not taken to the hospital. Mr. Connors has filed a lawsuit, filed grievances, and told prison and medical staff *ad nauseum* that he will suffer pain and develop a bowel obstruction or pelvic

abscess if he is not placed on a low-residue diet. These symptoms have happened before and Mr. Connors shows signs that it is happening now. Mr. Connors was promised by prison officials at the Estelle Unit that he would be sent to medical specialists at UTMB Galveston—they know he is in crisis—but this promise too has not been kept. Defendants know Mr. Connors is experiencing a medical crisis and they fail to act.

27. Mr. Connors's four-hour visit with Victoria Connors was cut short on July 19, 2019 because of a severe episode that included painful cramps and blood, pus, and digestive waste leaking out of his anus, soiling his clothes. After a brief visit to the Estelle Unit infirmary where he was not given any substantive treatment, he was sent to his cell, where he slept and soiled himself again—further evidence that his condition was not treated. These symptoms are abnormal and, given Mr. Connors's record, they're clearly dangerous.

28. The combination of his medical history, the promise to be sent to UTMB Galveston, several severe symptoms including offensive and abnormal smells, and Mr. Connors's *ad nauseum* formal and informal complaints that he believes that he has a bowel obstruction and/or pelvic abscess that according to Dr. Mannem "***may be very morbid … for the patient***" evidence that Defendants infer potential harm exists but continue to do nothing.

29. [3] As detailed above, prison officials refused to treat him or are unable to treat him. They ignored his complaints by providing only a *pro forma* visit to the infirmary followed by sending him to his cell. Their conduct evinces wanton disregard for his serious medical needs. If nothing else, while at the infirmary, Defendants must have checked his medical history. If they did, they should have sent him to UTMB Galveston immediately because of his pattern of serious medical treatment for the same condition he's suffering now but prison officials have at best put him on an "expedited" schedule which means no meaningful treatment for a morbid

condition for at least thirty days. If they did not check his medical history, Mr. Connors is in even more desperate need as he is receiving zero medical attention by prison officials who are untrained and deliberately indifferent to an inmate with extreme and aberrant symptoms. From these facts, it appears that the prison officials are willing to let Mr. Connors die.

A SUBSTANTIAL THREAT THAT FAILURE TO GRANT THE ORDER WILL RESULT IN IRREPARABLE INJURY

30. Mr. Connors's symptoms of digestive fluids leaking out of his anus imply an obstructed bowel. Further, blood and pus draining out of his anus indicate an intestinal infection that, if it's anything like what he's suffered before, means he very likely has a pelvic abscess. The foul, pungent odor from the leakage reinforces the conclusion that his condition is severe. UTMB's Dr. Mannem, other Defendant medical specialists, and Plaintiff's expert Dr. Vlasak agree that a ***bowel obstruction is very painful*** and ***a pelvic abscess is life-threatening***.

THE THREATENED INJURY OUTWEIGHS ANY DAMAGE THAT THE INJUNCTION WILL CAUSE DEFENDANTS

31. Defendants cannot suffer any damage greater than Mr. Connors losing his life.

32. Even if, *arguendo*, Mr. Connors does not have an immediate life-threatening condition, which no one can know, Mr. Connors is suffering bouts of extreme pain including abdominal cramps and spasms. Something is wrong with his intestines that is causing enormous and needless suffering.

33. Defendants cannot articulate any injury if they are ordered to send Mr. Connors to UTMB Galveston immediately. They have a duty to send him there, they have promised to send him there in thirty days (after July 19). All the Court's injunctive order would do is to remove Mr. Connors from the waiting list and put him to the front of the line.

34. Further, again *arguendo*, if Mr. Connors is actually has a pelvic abscess and if that abscess would burst and go septic before he is sent to the hospital, Defendants will save time and

expense by treating Mr. Connors immediately rather than wait and see if he survives until whatever day Defendants otherwise eventually send him. Saving time and money now means saving Mr. Connors from greater injury and saving themselves from his need for greater medical care.

THE INJUNCTION WILL NOT HAVE AN ADVERSE EFFECT ON THE PUBLIC INTEREST

35. The public has no interest in Mr. Connors suffering or dying and the public interest would not be adversely affected if Defendants are ordered to send him to UTMB Galveston.

**B. Request for a Low-Residue Diet**

36. Argument that the Court should order Mr. Connors to be put on a low-residue diet now rather than wait until after trial very closely track the reasoning why Mr. Connors should be sent to the hospital for specialist care now. If the Court orders Defendants to send Mr. Connors to the hospital but does not order that he be put on the low-residue diet, this cycle will repeat and Mr. Connors will again be put at risk for his life until this case resolves. Defendants have not followed their own medical specialists' advice so Mr. Connors needs the Court to order that he receive his necessary diet.

37. Reversing summary judgment in favor of the same Defendants (TDCJ and UTMB) for refusing to provide soft food to an inmate who had no teeth, the Fifth Circuit held, "It is clearly established that state prisoners are entitled to reasonably adequate food. The Eighth Amendment is violated if the denial of food constitutes a denial of the minimal civilized measure of life's necessities. Indeed, we have held that because depriving a prisoner of adequate food is a form of corporal punishment, the Eighth Amendment imposes limits on prison officials' power to so deprive a prisoner." *Marquez v. Woody*, 10-40378, (5th Cir. Sept. 6, 2011) (internal quotation marks and citation omitted).

38.     Importantly, Defendants' medical specialists and Plaintiff's medical expert agree. There is no controversy that the right diet for Mr. Connors is a low-residue diet that includes three servings of *Boost* or *Osmolite* to supplement any shortfall in nutrition. Plaintiff contends the only reason why he is not on this diet originally, which is part of the basis of his related lawsuit, is because his primary care providers at the Darrington Unit withheld the diet to harass and punish him for no penological reason.

39.     In his related lawsuit, Defendants have listed only Dr. Julye as their medical expert who in a May 2012 memorandum to two prison officials and two registered nurses was that Mr. Connors should "***AVOID fiber and other foods that are harder for your body to digest are restricted. Fiber is made up of plant material that cannot be completely digested by the body. High-fiber foods include whole-grain breads and cereals, nuts, seeds, and raw or dried fruits***."[44] Dr. Julye goes on to list several foods that Mr. Connors is to avoid, including the same foods that he has been getting every day since May 30, 2019. Any judicious doubt the Court may have should be at ease because every doctor who has looked at Mr. Connors's record says he should receive only a low-residue diet.

40.     While immediate treatment is urgently needed, without a Court order that Mr. Connors be placed on a low-residue diet immediately as well, Mr. Connors risks being given the same wrongful, harmful diet, having a choice only to eat it or starve, and to once more beg to be sent to see UTMB Galveston medical specialists.

41.     In *Balla v. Idaho State Bd. of Corrections*, three inmates were denied medically necessary diets. One became blind due to diabetes, another suffered a diabetic seizure, and the third spent extended time in the hospital due to a relapse of Crohn's Disease. The court wrote, "As a matter

---

[44] Ex.2, Bates 3368.

of law, the evolving standards of decency that mark the progress of a maturing society require prison officials to afford inmates special diets if prescribed for them." 595 F.Supp. 1558, 1574-75 (D.C. Idaho 1984).

42. Beyond that district court's reasoning, precedent in Mr. Connors's case is found in *Farmer v. Brennan*, which found that prison officials can be held liable for denying inmates humane conditions when they subjectively know yet disregard excessive risks to inmate healthy and safety. *Farmer*, 511 U.S. at 837.

43. Mr. Connors's low-residue diet is needed for his entire life. He will not regrow his colon. Prison medical staff must treat all of an inmate's ailments, not simply those that are apparent such as a broken hand. Discussing the arbitrary cancellation of a prescribed low-cholesterol diet, the Seventh Circuit noted that "Custodians are not excused from ensuring adequate treatment for inmates with chronic or degenerative conditions simply because any resulting harms may remain latent or have not yet reached the point of causing acute or life-threatening injuries." *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016). See also *Ledee v. Morr*, No. 1:14-cv-00096 (W.D. La Mar. 21, 2016) (defendant's summary judgment denied on issue of failure to regularly provide medically prescribed diet).

44. Because all the experts agree that Mr. Connors should be on the low-residue diet prescribed to Mr. Connors and his medical condition has not changed, Mr. Connors has a substantial likelihood of success on the merits of his case on either ADA or Eighth Amendment standard. A substantial threat that failure to grant the order will result in irreparable injury exists because of the clear pattern of serious hospitalizations when Mr. Connors is placed on the wrongful diet combined with the experts who state the causative link between wrongful diet and hospitalization. Defendants maintain several therapeutic diets for inmates with other diseases.

Ordering Defendants to add another therapeutic diet that was prescribed by Defendants' medical specialists won't incur any hardship on Defendants. Finally, the public again is not injured by Mr. Connors getting the food he needs and will most assuredly keep him out of the hospital. Frankly, the reverse is true, that the taxpayer's best interests is to keep Mr. Connors's medical costs down.

### III. CONCLUSION

45. For the preceding reasons, Plaintiff respectfully request that this Court grant an emergency injunction ordering TDCJ and UTMB to send Mr. Connors for immediate diagnosis and treatment by a gastroenterological specialist and to provide him only with a low-residue diet until the conclusion of this case.

Respectfully submitted,

*/s/ Jerold D. Friedman*
Jerold D. Friedman
California SBN 290434
SDTX Federal ID 2117436

LAW OFFICE OF JEROLD D. FRIEDMAN
19744 Beach Blvd. #390
Huntington Beach, CA 92648
(213) 536-1244
fax (281) 667-3506
lawoffice.jdf@gmail.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that he has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 14th day of August 2019. Fed.R.Civ.P. 5(b).

*/s/ Jerold D. Friedman*
Jerold D. Friedman

## CERTIFICATE OF CONFERENCE

The undersigned counsel hereby certifies that he sent electronic mail correspondence to all Defendants at the electronic mail addresses provided by their business offices. That electronic correspondence notified Defendants that Plaintiffs would file an Emergency Application for a Temporary Restraining Order and requested that they respond with their availability for an immediate hearing.

*/s/ Jerold D. Friedman*
Jerold D. Friedman
